CLARK C. McNISH ET AL. V. STATE, EX REL. SARAH DIMICK.

FILED JUNE 22, 1905.   No. 13,854.

1. **Mandamus: PUBLIC SCHOOLS: FOSTER-CHILD.** Mandamus will lie at the relation of the foster-parent of a child of school age, who is a *bona fide* resident of the district, to compel the board of education to admit such child to attendance, without the payment of tuition, in the public schools of the city in which such foster-parent resides.

2. ――――: ADOPTION. To be entitled to such relief, it is not necessary that the foster-parent shall have legally adopted the child under the forms of our statutes.

ERROR to the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*Grant G. Martin* and *John W. Graham,* for plaintiffs in error.

*Courtright & Sidner, contra.*

OLDHAM, C.

This was an action on the relation of Sarah Dimick for a peremptory writ of mandamus against the members of the board of education of the school district of the city of Fremont and the superintendent of public schools of said city, to compel the respondents to admit Iva Dimick, a child of the age of eight years, to the public schools of the city of Fremont. A peremptory writ was granted by the district court, and to reverse this judgment respondents bring error to this court.

The facts underlying this controversy are that the relator in this proceeding is, and has been for several years preceding the controversy, a *bona fide* resident and taxpayer of the city and school district of Fremont. The relator is a widow, and was living alone in April, 1903. Prior to this time the mother of the child, called Iva Rarick Dimick, had died in the state of Iowa, leaving a husband

and six children. The mother of the child was a cousin of the relator. After the death of Iva's mother, Mrs. Dimick corresponded with the father, and offered to take the child and raise her, educate her, and treat her in all respects as her own child, if the father would give Iva to her. After considerable correspondence, the father consented to the proposition. On the 25th day of April, 1903, he brought the child to Omaha, and gave her into the care and custody of the relator, and since that time the child has lived with the relator as a member of her household. The name of the child was entered on the enumeration lists in the school census of the district. She entered the schools and attended for some months without objection. Later, when the schools became crowded, the teacher of the grade in which the child was instructed, by direction of the superintendent, refused her admission, unless she would comply with the rule of the board which required the payment of tuition from nonresident pupils of the district. The relator appealed to the board for permission for the child's attendance, which the board refused, and on this refusal the present cause of action was instituted.

There is practically no disputed fact in the record. Respondents rely on a rule of the board, as follows: "Children, whose parents (or guardians who have legally adopted them) do not reside in the school district of Fremont shall be considered as nonresident pupils. They shall pay tuition per month, in advance, as follows." The respondent school district is governed by the provisions of section 2, chapter 79, subdivision 14, Compiled Statutes, 1903 (Ann. St. 11237), as follows: "That all schools organized within the limits of said cities shall be under the direction and control of the boards of education authorized by this subdivision. Such schools shall be free to all children between the ages of five and twenty-one years, whose parents or guardians live within the limits of said district, and all children of school age nonresidents of said district who are or may be by law allowed to attend said schools without charge." It will be noted that the rule of the

board relied upon qualifies the word guardian by the parenthetical clause, "who have legally adopted them," and that no such clause is found in the statute relied upon to support the rule.  It is true that the relator has never been appointed by a process of any court the guardian of Iva Dimick, nor has she ever formally adopted her as her own child; and yet no reasonable mind could deny that she does stand *in loco parentis* toward the child.  When the father found that, on account of the death of his wife, his own straitened financial circumstances, and the large size of his dependent family, he was unable to keep the children with him, he yielded to the request of the relator to furnish a home for the child and to educate and care for it in all respects as if it had been the natural child of the foster mother.  Now, the question arises as to whether section 2, *supra,* of our statutes is to be narrowly and technically construed for the purpose of shutting the doors of the school houses in the faces of many of the little boys and girls of the city and turning them out into the streets and by-ways, to grow up in idleness and ignorance, or whether it shall be liberally and broadly interpreted in the spirit of the provisions of section 6, article VIII of our constitution, which says: "The legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years."  Our view of the case is fitly expressed in the language of state superintendent Thayer of the state of Wisconsin, which is quoted with approval by the supreme court of that state in *State v. Thayer,* 74 Wis. 48, 41 N. W. 1014, and is as follows:

"In the incidents of human life families are broken up and must be scattered, by the necessities of obtaining a livelihood, by death of one or both parties, or by abandonment of offspring, as in this case.  Such children, as all others, are the wards of the state, to the extent of providing for their education to that degree that they can care for themselves and act the part of intelligent citizens.  To secure these ends, laws relating to public schools must

be interpreted to accord with this dominant, controlling spirit and purpose of their enactment, rather than in the narrower spirit of their possible relations to questions of pauperism and administration of estates."

The doctrine here announced is supported by holdings in *Yale v. West Middle School District,* 59 Conn. 489, 22 Atl. 295; *Board of Education v. Hobbs,* 8 Okla. 293, 56 Pac. 1052; *Mizner v. School District,* 2 Neb. (Unof.) 238.

We therefore conclude that the learned trial judge properly awarded the peremptory writ to compel the respondents to admit the child to their public schools, and we recommend that the judgment of the district court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons given in the above opinion, the judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.