THE STATE EX REL. SCHOOL DISTRICT No. 1 OF WAUKESHA vs. THAYER, State Superintendent.

*February 27 — March 12, 1889.*

*(1)* Certiorari *to state superintendent: What will be reviewed. (2, 3) Common schools: Residence of minors for school purposes.*

1. Upon *certiorari* to the state superintendent his decision upon a question of fact will not be reviewed if there was any evidence to support it.
2. A minor may have, for school purposes, a residence other than that of his parents.
3. The mother of a minor child had been deserted by her husband. She was a school teacher, having no permanent home, but boarding in Milwaukee, and unable to support and keep the child with her. She found a home for the child in Waukesha, where he worked for his board. The child had no other home or residence. He was not sent there to attend school, but from other considerations. *Held,* that the child had such a residence in Waukesha as entitled him to the privileges of the public school therein.

CERTIORARI to the State Superintendent.

The decision brought up for review was as follows:

"This is an appeal to the state superintendent to overrule and set aside a decision of the school district board of school district No. 1, village of Waukesha and state of Wisconsin, made on the 25th day of September, A. D. 1888, refusing to admit Philip Smith, a person of school age, and a son of M. Vail Smith, the appellant, to free tuition in the

public school maintained in and by said school district No. 1, usually known as the Union School of Waukesha.

"Following is an exact copy of the decision of said school district board: 'WAUKESHA, WIS., Sept. 25, 1888. *To D. J. Hemlock, Esq.* DEAR SIR: The school board have decided that Philip Smith, a nonresident, is not entitled to free tuition in our public school. Very respectfully, RICH. L. GOVE, IRA KIMBALL, A. J. FRAME, School Board.'

"The facts, so far as they are essential to the merits of this case, are not in dispute, and are as follows:

"M. Vail Smith is a married woman, the wife of W. H. Smith, and the mother of three minor children, the issue of her marriage with the said W. H. Smith, who are wholly dependent upon her for maintenance and support; that the said W. H. Smith in the year 1883 deserted his family, and since that time has contributed nothing towards the support of his wife, M. Vail Smith, nor of the three minor children hereinbefore mentioned; that the said M. Vail Smith is wholly dependent upon her labor for the support of herself and that of her children; that her occupation is that of a school teacher; that she has no permanent home, but lives wherever she is able to find employment in her avocation; that for a year past she has been employed as a teacher in the public schools of the city of Milwaukee; that for the year previous she was employed in like manner in the public schools of Seymour, Outagamie county, Wisconsin; that having no home, but boarding wherever she is employed, she is unable to provide a home for all her children with herself, but is compelled to provide suitable homes for some of them wherever she may be able to do so; that two of her children have, until recently, been provided with a home at the residence of a relative in the town of Waukesha, and that they attended the public school in the district where they resided; that one year ago her daughter, Leafy Smith, one of these two children, was pro-

vided a home in the village of Waukesha, has since resided there, and attended the public school in district No. 1, or the Union school of that village; that in August last it became necessary for her to provide another home for Philip Smith, the child remaining with her relative, owing to a change in his domestic affairs; that thereupon she procured him a home with Dr. Mary A. Fox, a resident of the village of Waukesha, where he could earn a part of his livelihood by work in the household of the said Dr. Mary A. Fox; that upon presenting himself at the public school in said school district No. 1, the principal of the school refused to assign the child Philip Smith a seat, or assign him lessons as a pupil in said school, claiming that in so doing he was acting in accordance with instructions of the district board; that upon appeal to the district board a meeting of the said board was called and held on the 25th day of September, A. D. 1888, at which the district board reached the decision hereinbefore mentioned; that written notice of its decision was sent to D. J. Hemlock, Esq., the attorney employed by Mrs. Smith to look after her interests in this case.

"These are the main facts alleged by the appellant, and they are neither denied nor disputed by the respondents.

"Answer to the appeal is made by the district board of school district No. 1, who allege that if the statements made by the appellant are true her child is not entitled to free tuition in the public schools in Waukesha, as she has no residence in that place and never has resided there; that she is entitled to free tuition for her children only at the place of her residence, which at present is in the city of Milwaukee.

"Much is said in the answer concerning the ability of Mrs. Smith to maintain her children, or rather this child, with herself, to pay the tuition required of nonresident children in the Waukesha school, the vote of the district con-

cerning admission of nonresident pupils, the danger of being " flooded " with applicants of similar character, etc.; all of which appears to be wholly irrelevant. The simple question in this case is whether Philip Smith is a resident of school district No. 1, Waukesha, and, as such, entitled to free tuition in the public school. If he is a nonresident, then he can attend such school only upon the terms prescribed for such pupils. If he is a resident, then he is entitled to attend the school irrespective of the mother's ability to pay tuition or to support him in Milwaukee or elsewhere, or the convenience of the district, or any vote of the district relating to nonresident pupils.

" The respondents call the attention of the state superintendent to a decision of a federal court holding that the domicile of a minor is the same as that of the parent. I am not unfamiliar with the legal controversies that have arisen over the matter of domicile of minors, nor ignorant of the tenacity with which 'courts of high degree have adhered to the doctrine laid down in the decision referred to. But if I do not misunderstand the decision of courts on this matter they have strongly insisted that the domicile of the child is determined by that of the *father*, and that these cases have all had reference to the custody and control of the persons and estates of minors. They have not included consideration and determination of questions relating to special rights and privileges to be affected by simple residence or inhabitancy. Furthermore, I understand that neither elementary writers nor decisions of courts are clear or unanimous upon the point of how the legal domicile of a minor may be changed; but decisions are not wanting in which courts have declared that exceptional cases might arise, when the father has abandoned his minor children, in which it would be impolitic and unjust to hold to the usual doctrine of a minor's domicile. If it was deemed necessary to put this case into that category, a very strong plea for so

doing might be made. For while it is alleged and admitted that the mother of Philip Smith is the legal guardian thereof, there is no proof that such is the case, nor that the father has ever been dispossessed of his natural and legal right to control the person and estate of his child, and that his domicile, and not the residence of the mother, does not now constitute the actual legal domicile of this child. For aught that appears in these papers, that domicile is unknown and undiscoverable, and if legal domicile alone is to determine the matter, the child might be debarred from all schools in the state, and practically from all instruction during proper school age.

"It does not appear to the state superintendent that the constitution or the laws of this state contemplate that the right to attend the public schools is to be determined by ascertaining the legal domicile of the child. The constitution is significantly silent upon the matter of limitations upon attendance, except that of age. It does declare, however, that tuition in these schools shall be *free.* The supreme court has affirmed the validity of our statutory system of districts for the maintenance of public schools, and the right of such districts to refuse admission to persons who do not reside therein. This term '*reside,*' however, is used by the court and in the statutes in its general, popular sense, rather than in the restricted, technical sense of legal domicile. The supreme court and the statutes alike speak of 'children residing' in districts, of 'children residing in the district on the 30th day of June' being enumerated, of a 'child residing in one district' not having an absolute right 'to the privileges of a common school in another district,' etc.

"Ch. 121, Laws of 1879, enacted for the purpose of securing to every child between certain ages the benefits of an elementary education, seems to be conclusive upon this point. This statute makes it the duty of every person having in 'charge' a child of compulsory school age to

send such child to school at least twelve weeks each year, and imposes a penalty for the neglect of such duty. Not parents and guardians alone, but *every* person having in charge a child between the ages of seven and fifteen years, is amenable to this law. It is evident, therefore, that the language used in these connections is designedly used to recognize the mobility of school population or persons of school age; that it is the true intent and purpose of the law to throw open the doors of the public school to such persons wherever actually residing. Such has been the constant and uniform interpretation of the law by this department. Effort has been made to guard against the precipitancy of nonresidents to points where superior advantages exist and schools of high order are maintained, by holding that such children only are entitled to free tuition as are actually residing in the district for other, as a main purpose, than to participate in the advantages which the school affords.

"This appears to be a just and equitable view to take, and one to which neither party should object. Under this view, children are enumerated where they actually live and have a home; the district receives the public money apportioned upon their account; the children have the benefits of attendance upon the public schools, and are without excuse if they fail to acquire a common-school education. Any other interpretation of the law would certainly result in debarring many from the privileges of the public schools, to maintain which all the taxable property of the state is laid under tribute.

"In the incidents of human life families are broken up and must be scattered by the necessities of obtaining a livelihood, by death of one or both parties, or by abandonment of offspring, as in this case. Such children, as all others, are the wards of the state to the extent of providing for their education to that degree that they can care for them-

selves and act the part of intelligent citizens. To secure these ends, laws relating to public schools must be interpreted to accord with this dominant, controlling spirit and purpose of their enactment, rather than in the narrrower spirit of their possible relations to questions of pauperism and administration of estates.

" Holding the views above expressed, and following the decisions and opinions of record in this office, this appeal must be sustained.

"The decision of the board of school district No. 1, Waukesha, herein cited, that Philip Smith is a nonresident of that district, and not entitled to free tuition in the public school thereof, is hereby overruled and set aside. This decision will be sent to D. J. Hemlock, Esq., Waukesha, Wis., attorney for the appellant, who will without unnecessary delay cause the same to be filed in the office of the district clerk of school district No. 1, village of Waukesha, and, when the same is so filed, notify the state superintendent by mail to that effect. Given under my hand and seal of office at Madison, Wisconsin, this 17th day of November, A. D. 1888.        J. B. THAYER, State Supt."

*T. W. Haight,* for the relator, cited 2 Kent's Comm. (Holmes' ed.), *227, note *b; School Directors v. James,* 2 Watts & S. 570; *Potinger v. Wightman,* 3 Meriv. 67; Dicey on Domicile, 100, 101; Jacob's Law of Domicile, secs. 75, 253; *Holyoke v. Haskins,* 5 Pick. 26; *State ex rel. Comstock v Joint School Dist.* 65 Wis. 631; *Kellogg v. Winnebago Co.* 42 id. 104; *Hall v. Hall,* 25 id. 608; Desty on Taxation, 322, 325; *Langdon v. Doud,* 6 Allen, 423.

For the respondent there was a brief by the *Attorney General* and *L. K. Luse,* Assistant Attorney General, and oral argument by *Mr. Luse.*

TAYLOR, J. A writ of *certiorari* was issued out of this court upon the petition of the school district board above

named, directed to the state superintendent, for the purpose of bringing up for review by this court a decision made by said superintendent upon an appeal from the decision of the said school district board refusing to permit the minor child of Mrs. M. V. Smith to attend the public school in said district. The school board refused to permit such minor child to attend its school, on the ground that he was not a resident of the district and therefore not entitled to the benefits of the school except upon payment of certain sums fixed by said board to be charged against nonresidents attending such school. From this decision of the school board Mrs. Smith, on behalf of her minor child, appealed to the state superintendent, and after a full hearing of such appeal upon proofs of all the material facts the superintendent reversed the decision of the school board and adjudged that the said minor child of the appellant, Mrs. Smith, was a resident of said school district within the meaning of the law governing school districts, and entitled to attend the school of said district without paying for tuition.

Although the statute declares that the decision of the superintendent shall be "final" (see subd. 4, sec. 166, R. S.), this court has held that his decisions may be reviewed by this court by writ of *certiorari* (see *State ex rel. Moreland v. Whitford*, 54 Wis. 150; *State ex rel. Foster v. Graham*, 60 Wis. 395). This court said in *State ex rel. Moreland v. Whitford, supra*, that this court, upon a writ of *certiorari* directed to the state superintendent, "would not review mere questions of fact, when there is any contention as to the proofs." The only question in this case was whether the minor child of Mrs. Smith had a residence in the school district in the village of Waukesha, within the meaning of the laws concerning public schools. This might be a question of law upon a given state of facts; but the facts in this case were disputed, and if the facts are as claimed by the appellant, Mrs. Smith, then there can be no

question as to the correctness of the decision of the superintendent. She claimed that her minor son had his home within the district, and, if so, he was clearly a resident within the meaning of the law. On the other hand, it is claimed by the district that, if he had any home, it was with his mother in Milwaukee, and that he was sent to Waukesha, not for the purpose of making a home for him there, but for the sole purpose of attending the school in such district. Upon this disputed question of fact the learned superintendent has found in favor of the claim of Mrs. Smith, and, under the rule above stated, such finding as to that fact is not reviewable in this court. It cannot be fairly contended that there was no evidence to support the finding of the superintendent.

The allegations of fact made by Mrs. Smith are that she is the mother of the minor child in question, who is about the age of thirteen years; that in 1883 she was deserted by her husband, and she was left with three children, of whom the minor in question is the youngest; that she has been since such desertion compelled to provide for the support of said three children, and that the husband has provided no support for them; that she is a school teacher, and has no other business except teaching school; that she has no home of her own, and is now teaching in the city of Milwaukee, and boards, not keeping house on her own account; that she is unable to support and maintain her said children in the city of Milwaukee, and is compelled to provide homes for them outside of said city; that up to about one year ago her daughter Leafy Smith, and up to the month of August, 1888, her son Phillip Smith, the boy in question, had a home with her uncle, John Wagner, who resided in the town of Waukesha, near the village of Waukesha, at which place they attended the public school; that her daughter Leafy has since had a home in the village of Waukesha, and attended the public school there;

that on account of changes in the family of her uncle during the past season, by marriage, her son Phillip could no longer have a home there, and she was obliged to find a home for him in some other place, and therefore she secured a home for him with the family of Dr. Mary A. Fox, in the village of Waukesha, and within the limits of said school district; that Phillip works for his board for said Dr. Fox, and has no other home or residence; *that she did not send her said son to reside in Waukesha, in said district, for the purpose of attending said school, but such fact was incidental to his going there; that other considerations induced her to select said place for his residence and home;* stating at considerable length the reasons for desiring that he should have a home in Waukesha village. She also states in her proofs that she is the legal guardian of said Phillip, but does not state how or in what manner she became such legal guardian, except that her husband deserted her, leaving said Phillip and the other children in her care and custody and dependent upon her for support. These statements of fact were not controverted by the relator in this case, and are found by the learned state superintendent to be true.

In disposing of this proceeding, this court must consider the facts stated as sufficiently established by the proofs before the superintendent, under the rule stated above by this court in *State ex rel. Moreland v. Whitford, supra.*

It is contended by the learned counsel for the relator that, admitting the facts alleged by Mrs. Smith and the other witnesses produced on her part to be as stated by them, they do not make out such a case of residence on the part of Phillip Smith within the school district of the village of Waukesha as entitles him to the privileges of the public school of such district. It is not denied by the learned counsel for the relator that if Phillip had such a residence within the district as would entitle him to be enumerated under the provisions of subd. 1, sec. 462, R. S., as amended

by ch. 107, Laws of 1879, then he would be entitled to the privileges of the public school.  It would clearly be inequitable and unjust to hold otherwise, as the public funds, which to a great extent maintain such school, are apportioned on the basis of the enumeration provided for in said section.  The contention of the learned counsel is that a minor child who has a father or mother, or both, living, can have no residence for the purpose of the privileges of a public school different from the residence of the father, if living, and of the mother after the death of the father. While this may be the general rule, we think it clear that the statute above referred to, in regard to enumeration of children of school age, clearly contemplated exceptions to the general rule; and we think the argument of the learned superintendent in this case, as well as the long approval of his opinion by his predecessors in office, is conclusive against the contention of the learned counsel for the relator.  We refer to such opinion, which will be reported in this case, for a full vindication of the practice established in the superintendent's office.  To establish the rule that a minor cannot have a residence for school purposes other than that of his parents would in many cases deprive such minor of all benefit of such schools.  When the minor has poor parents, the poverty of the parents renders it absolutely necessary, in many cases, that a home for the minor children should be found in places different from that of the parents; and under the construction insisted upon by the learned counsel for the relator, such unfortunate children, for whose benefit our free schools were especially instituted, would be deprived of all benefit of them.  Such construction of the law would be against its beneficent spirit, and should not prevail unless the language is so clear that no other can be given to it.

We do not decide in this case, nor do we understand the learned state superintendent to decide, that the father or

mother or other legal guardian of a minor can transfer such minor from one school district to another for the sole purposes of having the privileges of the public school of the district to which he may be transferred. The rule in such case is very clearly stated by the learned superintendent in the following language: "Effort has been made to guard against the precipitancy of nonresidents to points where superior advantages exist and schools of high order are maintained, by holding that such children only are entitled to free tuition as are actually residing in the district *for other, as a main purpose, than to participate in the advantages which the school affords.*" "This appears to be a just and equitable view to take, and one to which neither party should object."

The facts in this case, as found by the learned superintendent, support the contention of his mother that Phillip Smith was sent to reside in the village of Waukesha in order to give him a suitable home in the family of Mrs. Dr. Fox, and that the main purpose was not to participate in the advantages of the public schools of such village. The rule above stated was recognized by the supreme court of New Hampshire in the cases of *School Dist. v. Bragdon*, 23 N. H. 507, 516, and *School Dist. v. Pollard*, 55 N. H. 503, and, as said by the learned superintendent, is "just and equitable."

*By the Court.*— The decision of the state superintendent herein is affirmed.